**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GEERTSON SEED FARMS, an Oregon
business; TRASK FAMILY SEEDS a
South Dakota business; CENTER
FOR FOOD SAFETY, a Washington
DC nonprofit corp.; BEYOND
PESTICIDES, a Washington DC
nonprofit corp.; CORNUCOPIA
INSTITUTE, a Wisconsin nonprofit
corp.; DAKOTA RESOURCE COUNCIL,
a North Dakota nonprofit corp.;
NATIONAL FAMILY FARM COALITION,
a Michigan nonprofit corp.; SIERRA
CLUB, a California nonprofit corp.;
WESTERN ORGANIZATION OF
RESOURCE COUNCILS a Montana
nonprofit corp.,
                    *Plaintiffs-Appellees,*

          v.

MIKE JOHANNS, in his official
capacity as Secretary of the U.S.
Department of Agriculture; STEVE
JOHNSON, in his official capacity as
Administrator of the U.S.
Environmental Protection Agency;
RON DEHAVEN, in his official
capacity as Administrator of the
Animal Plant Health and
Inspection Service, U.S.
Department of Agriculture,
                    *Defendants,*

No. 07-16458

D.C. No.
CV-06-01075-CRB

FORAGE GENETICS, INC.; JOHN
GROVER; DANIEL MADEROS; MARK
WATTE,
                *Defendant-intervenors,*

                and

MONSANTO COMPANY,
        *Defendant-intervenor-Appellant.*

GEERTSON SEED FARMS, an Oregon
business; TRASK FAMILY SEEDS a
South Dakato business; CENTER
FOR FOOD SAFETY, a Washington
DC nonprofit corp.; BEYOND
PESTICIDES, a Washington DC
nonprofit corp.; CORNUCOPIA
INSTITUTE, a Wisconsin nonprofit
corp.; DAKOTA RESOURCE COUNCIL,
a North Dakota nonprofit corp.;
NATIONAL FAMILY FARM COALITION,
a Michigan nonprofit corp.; SIERRA
CLUB, a California nonprofit corp.;
WESTERN ORGANIZATION OF
RESOURCE COUNCILS a Montana
nonprofit corp.,
                *Plaintiffs-Appellees,*

                v.

MIKE JOHANNS, in his official
capacity as Secretary of the U.S.
Department of Agriculture; STEVE
JOHNSON, in his official capacity as
Administrator of the U.S.
Environmental Protection Agency;

No. 07-16492
D.C. No.
CV-06-01075-CRB

RON DEHAVEN, in his official
capacity as Administrator of the
Animal Plant Health and
Inspection Service, U.S.
Department of Agriculture,
                    *Defendants,*

MONSANTO COMPANY,
          *Defendant-intervenor,*

            and

FORAGE GENETICS, INC.; JOHN
GROVER; DANIEL MADEROS; MARK
WATTE,
  *Defendant-intervenors-Appellants.*

TRASK FAMILY SEEDS a South
Dakota business; CENTER FOR FOOD
SAFETY, a Washington DC
nonprofit corp.; BEYOND
PESTICIDES, a Washington DC
nonprofit corp.; CORNUCOPIA
INSTITUTE, a Wisconsin nonprofit
corp.; DAKOTA RESOURCE COUNCIL,
a North Dakota nonprofit corp.;
NATIONAL FAMILY FARM COALITION,
a Michigan nonprofit corp.; SIERRA
CLUB, a California nonprofit corp.;
WESTERN ORGANIZATION OF
RESOURCE COUNCILS a Montana
nonprofit corp.; GEERTSON SEED
FARMS, an Oregon business,
                    *Plaintiffs-Appellees,*

            and

No. 07-16725

D.C. No.
CV-06-01075-CRB

ORDER AND
AMENDED
OPINION

GEERTSON SEED FARMS, an Oregon Corp.,

Plaintiff,

v.

MIKE JOHANNS, in his official capacity as Secretary of the U.S. Department of Agriculture; STEVE JOHNSON, in his official capacity as Administrator of the U.S. Environmental Protection Agency; RON DEHAVEN, in his official capacity as Administrator of the Animal Plant Health and Inspection Service, U.S. Department of Agriculture; STEVE JOHNSON, in his official capacity as Administrator of the United States Environmental Protection Agency,

Defendants-Appellants

and

MONSANTO COMPANY; FORAGE GENETICS, INC.; JOHN GROVER; DANIEL MADEROS; MARK WATTE,

Defendant-intervenors

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted June 10, 2008
San Francisco, California

Filed June 24, 2009

Before: Mary M. Schroeder and N. Randy Smith,
Circuit Judges, and Valerie Fairbank,* District Judge.

Opinion by Judge Schroeder
Dissent by Judge N. Smith

---

*The Honorable Valerie Fairbank, United States District Judge for the Central District of California, sitting by designation.

**COUNSEL**

Marc Kesselman, Washington, D.C., for defendants-intervenors/appellants Government.

Maureen Mahoney, Washington, D.C., for defendants-intervenors/appellants Monsanto et al.

George Kimbrell, Washington, D.C., for the plaintiffs-appellees.

**ORDER**

The opinion and dissent filed September 2, 2008, and appearing at 541 F.3d 938 (9th Cir. 2008), are hereby

amended. The amended opinion and dissent are filed concurrently with this Order.

With these amendments, Judges Schroeder and Fairbank have voted to deny the petition for panel rehearing and recommend denial of the petition for rehearing en banc. Judge N.R. Smith votes to grant the petition for panel rehearing and rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and rehearing en banc is DENIED. No further petitions for rehearing will be accepted.

---

## OPINION

SCHROEDER, Circuit Judge:

The Monsanto Company ("Monsanto") is a large-scale manufacturer of chemical products, including herbicides and pesticides. In the 1990s it began developing a variety of alfalfa that would be resistant to one of its leading herbicides. The United States Department of Agriculture, through the Animal and Plant Health Inspection Service ("APHIS"), approved the genetically modified alfalfa in 2005.

This is an appeal from an injunction entered by the district court enjoining future planting of Monsanto alfalfa, called "Roundup Ready alfalfa," pending the preparation by APHIS of an environmental impact statement ("EIS"). The injunction was sought by plaintiffs Geertson Seed Farms and Trask Family Seeds, conventional alfalfa-seed farms, together with environmental groups, because they fear cross-pollination of the new variety with other alfalfa, thereby possibly causing con-

ventional alfalfa to disappear. Monsanto and its licensee, Forage Genetics, Inc. ("Forage Genetics"), intervened on the side of the government defendants. Monsanto, Forage Genetics, and the government pursue this appeal.

There are no issues of law and we therefore review for abuse of discretion. *See Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 823 (9th Cir. 2002). We affirm because the district court did not abuse its discretion in entering the injunction after holding one hearing on the nature of the violation of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4332(C), and two hearings on the scope of injunctive relief, as well as reviewing extensive documentary submissions relating to an appropriate remedy. The injunction is limited in duration to the time necessary to complete the EIS. The existence of the NEPA violation is not disputed on appeal.

## Background

Roundup Ready alfalfa is an alfalfa crop that was genetically engineered by Monsanto to be tolerant of glyphosate, which is the active ingredient in its herbicide Roundup. The particular lines of genetically engineered alfalfa that are at issue here were designated as events J101 and J163 ("Roundup Ready alfalfa"). Monsanto owns the intellectual property rights to Roundup Ready alfalfa and licenses the technology to Forage Genetics, who is the exclusive developer of Roundup Ready alfalfa seed.

APHIS, a division of the United States Department of Agriculture, has the authority to regulate "the introduction of organisms and products altered or produced through genetic engineering that are plant pests or are believed to be plant pests," or "regulated articles." *See* 7 C.F.R. § 340.0(a)(2) & n.1. APHIS initially classified Roundup Ready alfalfa as a regulated article. Monsanto submitted a petition in April 2004 requesting nonregulated status for events J101 and J163.

APHIS had three options: it could take no action, in which case Roundup Ready alfalfa would continue to be a regulated article; it could unconditionally deregulate Roundup Ready alfalfa, which would require the agency to make a finding of no significant impact; or it could partially deregulate Roundup Ready alfalfa, either by approving some but not all of the lines involved, or by approving the petition but imposing geographic restrictions.

APHIS published a notice in the Federal Register in November 2004 advising the public of Monsanto's petition and soliciting comments. It explained that APHIS had prepared an Environmental Assessment ("EA") in accordance with NEPA and its implementing regulations. In the EA, APHIS explained that alfalfa is pollinated by insects, primarily bees, and that insect pollination has been documented as occurring up to 2 miles from the pollen source. With regard to the threat of possible genetic contamination of non-genetically engineered alfalfa, it explained that the National Organic Program mandates buffer zones around organic production operations, the size of which are decided by the organic producer and the certifying agent on a case-by-case basis. The EA concluded that it was therefore unlikely that Roundup Ready alfalfa would have a significant impact on organic farming.

APHIS received 663 comments, 520 of which opposed the petition and 137 of which supported it. Most of the commenting alfalfa growers and seed producers supported it because they said there was a demand for weed-free alfalfa, and Roundup Ready alfalfa would provide farmers a new option for weed control by allowing farmers to apply herbicide after weeds have germinated. Most of the academic professionals, agricultural support industries, and growers associations who commented supported the petition as well. Opponents of the petition, who included organic and conventional alfalfa growers, cited concerns that inadvertent gene transmission would occur, and that foreign and domestic markets may not accept

products that cannot be guaranteed to be non-genetically engineered. They urged a full environmental evaluation through an EIS that would analyze the environmental effects of all the alternatives. *See Natural Res. Def. Council, Inc. v. Winter*, 518 F.3d 658, 688 (9th Cir. 2008) ("NEPA's procedural requirements mandate that an agency take a 'hard look' at the environmental consequences of its actions."), *overruled on other grounds by Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365 (2008).

On the basis of the EA and after considering the comments received, APHIS in June 2005 made a finding of no significant impact. *See* 70 Fed. Reg. 36,917, 36,918 (June 27, 2005). It therefore concluded that it did not need to prepare an EIS, and it unconditionally deregulated Roundup Ready alfalfa.

Plaintiffs filed this action in February 2006, alleging violations of NEPA and other federal statutes. The district court first considered whether APHIS had violated NEPA. After a hearing on plaintiffs' and defendants' motions for summary judgment, the district court granted plaintiffs' motion in February 2007, holding that APHIS had violated NEPA by deregulating Roundup Ready alfalfa without first preparing an EIS. The court ruled APHIS had failed to take the required "hard look" at whether and to what extent the unconditional deregulation of Roundup Ready alfalfa would lead to genetic contamination of non-genetically engineered alfalfa. The district court then turned to the issue of an appropriate remedy for the violation.

Monsanto and Forage Genetics intervened in the action at the remedies phase. They argued that growers had already purchased Roundup Ready alfalfa seed in preparation for the spring planting season, which was underway and would be ending soon, and that it would be difficult for those growers to purchase other seed in time to plant it. After hearing argument, the court entered a preliminary injunction on March 12, 2007. The preliminary injunction enjoined all planting of

Roundup Ready alfalfa and all sales of Roundup Ready alfalfa seed after March 30, 2007, pending the issuance of a permanent injunction. This allowed farmers who were prepared to plant Roundup Ready alfalfa immediately, and who had already purchased the seed, to do so. The injunction also allowed all Roundup Ready alfalfa that had been planted since the deregulation decision to be grown, harvested, and sold without restriction.

In April 2007, the court held a hearing on the scope of permanent injunctive relief. Plaintiffs sought to enjoin all future planting of Roundup Ready alfalfa, as well as the harvesting of any Roundup Ready alfalfa seed already planted, pending the completion of an EIS and a new decision on deregulation; they also requested the publication of the location of Roundup Ready alfalfa crops. Defendants asked that planting go forward, but not unconditionally. At the remedy stage, APHIS agreed for the first time that any future planting should be subject to certain conditions, including requiring isolation distances from other crops and requiring certain harvesting conditions to minimize gene flow to non-genetically engineered alfalfa seeds.

The district court considered voluminous evidentiary submissions from both sides, including the detailed declarations of multiple witnesses regarding the scope of permanent injunctive relief and scientific papers on the factual issues involved. The parties' experts disagreed over virtually every factual issue relating to possible environmental harm, including the likelihood of genetic contamination and why some contamination had already occurred. Defendants' evidence included declarations and live testimony by Forage Genetics' president, Mark McCaslin, declarations of an APHIS official, Neil Hoffman, and a declaration from a scientist at Colorado State University, Bob Hammon, who had conducted a study sponsored by Forage Genetics on pollen movement from alfalfa-seed fields by bees. Plaintiffs' evidence included Hammon's study, which they argued supports their position, as

well as declarations from seed growers whose crops had been contaminated with the Roundup Ready gene and scientists who opined that genetic contamination is likely to occur.

The court entered its permanent injunction in May 2007. It adopted a middle course in determining the appropriate remedy, enjoining new planting but refusing to enjoin harvesting of already-planted Roundup Ready alfalfa. It declined to hold a further hearing to resolve the issues that it said APHIS should resolve in the EIS. "After carefully reviewing defendants' voluminous evidence, including the evidence submitted in support of the intervenors' surreply, as well as plaintiffs' evidence, the Court declines to permit the expansion of the Roundup Ready alfalfa market while APHIS conducts the analysis it should have prepared before it allowed for the non-permitted introduction of the crop in the first instance."

Accordingly, the district court enjoined all planting of Roundup Ready alfalfa after March 30, 2007, pending APHIS's completion of an EIS and its decision on the deregulation petition. The district court rejected the conditions proposed by the agency because it found that genetic contamination had occurred when similar conditions were in place pursuant to Forage Genetics' contracts with Roundup Ready alfalfa growers. The district court, however, also rejected the Plaintiffs' request to enjoin the harvesting and sale of Roundup Ready alfalfa seed that had already been planted. The court instead deferred to the agency and adopted "the relevant conditions proposed by APHIS."

Defendants, joined by intervenors Monsanto and Forage Genetics (collectively, "appellants"), appeal the injunction, arguing it is too broad, but neither the government nor the intervenors now question the existence of a NEPA violation. They dispute only the scope of the injunction, and whether the district court should have held a further hearing before enjoining future planting.

**Scope of the Permanent Injunction**

Appellants argue that the district court erred in ordering injunctive relief because it improperly presumed irreparable injury instead of applying the traditional four-factor test for the issuance of a permanent injunction, as required under *eBay v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). They argue that, as a result, the district court's injunction was overbroad because the court did not consider the likelihood of potential harm if Roundup Ready alfalfa was planted subject to the mitigation measures proposed by APHIS.

[1] To obtain permanent injunctive relief, a plaintiff must show " '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.' " *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007) (quoting *eBay*, 547 U.S. at 391). This traditional balancing of harms applies in the environmental context. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 (9th Cir. 1995); *see also Lands Council v. McNair*, ___ F.3d ___, 2008 WL 2640001, at *21 (9th Cir. July 2, 2008) (en banc) ("Our law does not . . . allow us to abandon a balance of harms analysis just because a potential environmental injury is at issue."). In determining the scope of an injunction, a district court has " 'broad latitude,' " *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 641 (9th Cir. 2004) (quoting *Natural Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 999 (9th Cir. 2000)), and it " 'must balance the equities between the parties and give due regard to the public interest,' " *N. Cheyenne Tribe*, 503 F.3d at 842-43 (quoting *High Sierra*, 390 F.3d at 642).

[2] The Supreme Court has recognized that "the balance of harms will usually favor the issuance of an injunction to pro-

tect the environment" if injury is found to be sufficiently likely because "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987). In *Amoco*, the Court held that a preliminary injunction had been improperly ordered because injury to the environment was "not at all probable." *Id.* This court has recognized that even when a district court finds that a NEPA violation occurred, "in 'unusual circumstances' an injunction may be withheld, or, more likely, limited in scope." *Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 737 n.18 (9th Cir. 2001) (citing *Forest Conservation Council*, 66 F.3d at 1496).

**[3]** The Supreme Court held in *eBay* that courts cannot grant or deny injunctive relief categorically in place of applying the four-factor test. 547 U.S. at 394. The district court in that case had suggested that patent holders who license their patents do not suffer irreparable harm. *Id.* at 393. The Court held that the district court had erred in adopting "expansive principles suggesting that injunctive relief could not issue in a broad swath of cases." *Id.* It held that the reversing court of appeals had also erred because it too had applied a categorical rule, that injunctions in patent cases should generally be granted once infringement and validity are established except in the "unusual case, under exceptional circumstances." *Id.* at 394 (internal quotation marks omitted). The Court held "that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity . . . ." *Id.*

**[4]** Here, the record demonstrates that the district court applied the traditional four-factor test, required by *eBay*, before issuing its injunction. It expressly recognized that an injunction does not "automatically issue" when a NEPA violation is found and said that it was required to "engage in the

traditional balance of harms analysis." The court then discussed each of the four factors of the traditional balancing test and concluded that the equities favored an injunction against the future planting of Roundup Ready alfalfa.

With respect to harm, the court found that genetic contamination of organic and conventional alfalfa had already occurred, and it had occurred while Monsanto and Forage Genetics had contractual obligations in place that were similar to their proposed mitigation measures. It held that such contamination was irreparable environmental harm because contamination cannot be reversed and farmers cannot replant alfalfa for two to four years after contaminated alfalfa has been removed. The court also reasoned that appellants would be unable to enforce compliance with any proposed mitigation measures, given the government's admitted lack of resources. The court therefore did not presume that irreparable harm was likely to occur only on the basis of the NEPA violation; it concluded that plaintiffs had established that genetic contamination was sufficiently likely to occur so as to warrant broad injunctive relief, though narrower than the blanket injunction sought by plaintiffs. *See Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 375 (2008).

Appellants contend the district court did not take into account the evidence demonstrating that the likelihood of hay-to-hay transmission is extremely low because hay is harvested before the crops bloom to 10%. The district court examined the evidence and found that weather conditions could prevent farmers from harvesting hay before 10% bloom, citing the testimony of Forage Genetics' president. The district court's finding was not clearly erroneous.

After considering the likelihood of irreparable injury, the court next considered the balance of hardships. The harm to appellants was economic, and the court reasoned that Roundup Ready alfalfa accounted for only 15% of Forage Genetics' total revenue and "much, much less of Monsan-

to's." It also found that any unsold seed appears to be storable for planting in later years. The court's injunction allowed Roundup Ready alfalfa that had already been planted and that was to be planted before March 30 to remain, subject to certain conditions, and only enjoined future planting, which demonstrates that the court crafted a remedy that accounted for the hardships to both sides. Monsanto and Forage Genetics contend that the district court disregarded their financial losses, but the district court considered those economic losses and simply concluded that the harm to growers and consumers who wanted non-genetically engineered alfalfa outweighed the financial hardships to Monsanto and Forage Genetics and their growers.

The district court finally considered the public interest, the fourth factor in the framework for injunctive relief. *See N. Cheyenne Tribe*, 503 F.3d at 843. The court, while recognizing that agricultural biotechnology has social value, held that it would be in the public interest to enjoin the expanded use of Roundup Ready alfalfa before its impact was studied, because failing to do so could potentially eliminate the availability of non-genetically engineered alfalfa.

Appellants rely on *Northern Cheyenne* for the proposition that a narrower injunction should be entered here. In that case, we affirmed a district court's injunction. *Id.* at 846. *Northern Cheyenne* does not support a reversal in this case. There, the Bureau of Land Management ("BLM") had violated NEPA because its EIS failed to study an alternative method of development that the plaintiffs wanted the BLM to consider. *See id.* at 841, 844. The injunction permitted one method to proceed and prohibited other activity pending full compliance with NEPA. *Id.* We held that the district court's injunction was not an abuse of discretion. That conclusion does not support a holding that the injunction in this case was an abuse of discretion. APHIS did not take the requisite "hard look" at the impact of any form of deregulation on the environment. *See Nat. Res. Defense Council*, 518 F.3d at 688.

**[5]** Appellants also argue that the district court should have deferred to APHIS's proposed interim measures because of the expertise of the government agency, despite the agency's now undisputed failure to comply with NEPA. They rely primarily on *Idaho Watersheds Project*, 307 F.3d 815. However, that case does not require a district court to adopt an agency's proposed measures as a matter of law. *In Idaho Watersheds*, to determine the terms of an injunction to protect land and streams from the effects of too much cattle grazing pending the BLM's compliance with NEPA, the district court adopted the interim measures proposed by the BLM to respond to environmental injury, which the court thought represented a "balanced approach." *Id.* at 823, 830-31. Affirming, we said that "the Ninth Circuit has shown considerable deference for factual and technical determinations implicating substantial agency expertise." *Id.* at 831. Here, the agency's proposed interim measures would perpetuate a system that was found by the district court to have caused environmental harm in the past. While the agency's response may deserve deference, *Idaho Watersheds* does not require the district court to adopt it automatically. The district court did not abuse its discretion in choosing to reject APHIS's proposed mitigation measures in favor of a broader injunction to prevent more irreparable harm from occurring.

**[6]** The district court applied the traditional balancing test, and not a categorical rule, in fashioning the injunction here, *see eBay*, 547 U.S. at 394, and its factual conclusions were not clearly erroneous. The district court therefore did not abuse its discretion in formulating the remedy.

### Lack of an Evidentiary Hearing

**[7]** Monsanto and Forage Genetics also argue that the district court erred in declining to hold an evidentiary hearing before entering the permanent injunction. The district court had already held a hearing on whether an EIS was required, and heard testimony during a March hearing from Forage

Genetics' president on the scope of preliminary injunctive relief.

Monsanto and Forage Genetics requested that the district court hold an evidentiary hearing before issuing the permanent injunction so that the district court could, as described by that court, "assess the viability of its witnesses' opinions regarding the risk of contamination if APHIS's proposed conditions are imposed, as well as to resolve disputes with plaintiffs' witnesses." This evidence concerned the degree of the risk of environmental damage. There were voluminous documentary submissions from both sides disputing, among other things, the likelihood of genetic contamination of non-Roundup Ready alfalfa fields. APHIS did not request an evidentiary hearing.

The district court reviewed the documentary submissions, but it declined to hold a further hearing. It explained that holding the type of evidentiary hearing suggested by the intervenors "would require this Court to engage in precisely the same inquiry it concluded APHIS failed to do and must do in an EIS; defendants are in effect asking this Court to accept its truncated EIS without the benefit of the development of all the relevant data and, importantly, without the opportunity for and consideration of public comment." The court cited *Idaho Watersheds* in concluding that it did not need to conduct an extensive inquiry, involving scientific determinations, to determine what interim measures are necessary to protect the environment "while the [government] conducts studies in order to make the very same scientific determinations." 307 F.3d at 831.

Monsanto and Forage Genetics are correct that generally, a district court must hold an evidentiary hearing before issuing a permanent injunction unless the adverse party has waived its right to a hearing or the facts are undisputed. *See United States v. Microsoft Corp.*, 253 F.3d 34, 101-03 (D.C. Cir. 2001); *Charlton v. Estate of Charlton*, 841 F.2d 988, 989 (9th

Cir. 1988). The district court did not believe defendants had established any material issues of fact that were in dispute in the case before the court. Rather, it viewed the disputed matters to be issues more properly addressed by the agency in the preparation of an EIS.

[8] The injunction at issue here, as in *Idaho Watersheds*, is not a typical permanent injunction, which is of indefinite duration. A permanent injunction to ensure compliance with NEPA has a more limited purpose and duration. Thus, in *Idaho Watersheds*, a case involving a NEPA violation, this court held that an evidentiary hearing was not required before issuing an injunction. *See* 307 F.3d at 831. We distinguished this context from *Microsoft*, and the "normal injunctive setting," principally because *Idaho Watersheds* involved interim measures that would be in place only until the EIS was completed, at which point the parties would have "extensive input" into the determination of which measures would be adopted permanently. *Id.* at 831; *accord Mont. Wilderness Ass'n v. Fry*, 310 F. Supp. 2d 1127, 1155-56 (D. Mont. 2004) (holding that, under *Idaho Watersheds*, an evidentiary hearing was not required before imposing interim injunctive relief). The district court there had sought to avoid the catch-22 situation where an evidentiary hearing would require it to perform the same type of extensive inquiry into environmental effects that the ordered EIS will require the government agency to perform. *Idaho Watersheds*, 307 F.3d at 831. We agreed with the district court's approach, holding that an evidentiary hearing was not required because the measures were "interim measures designed to allow for a process to take place which will determine permanent measures, and all parties will have adequate opportunity to participate in the determination of permanent measures (and if need be challenge the outcome in court)." *Id.* We observed that requiring a hearing would duplicate the BLM's efforts and divert its resources from those efforts. *Id.* The district court here correctly denied a hearing because the same situation is presented in this case.

Monsanto and Forage Genetics also contend that even if *Idaho Watersheds* authorizes entry of a permanent injunction without an evidentiary hearing, it does so only if the court adopts the agency's recommendation. We explained in *Idaho Watersheds*, however, that the key reason a further evidentiary hearing was not required was that the injunction would be in place only until the necessary environmental studies were conducted. *Id.* In this case, as in *Idaho Watersheds*, the government does not contend that a further hearing is required, perhaps in order to avoid the duplication of resources we described in *Idaho Watersheds*. The dissent insists on remanding for a hearing that the government has never contended would be appropriate in this case.

The district court here considered extensive evidentiary submissions from all parties pertaining specifically to the remedy phase, as it was required to do. *See Microsoft*, 253 F.3d at 103 (holding that district court had erred in failing to consider the remedies-phase evidentiary submissions of defendant). It held two hearings during the remedies phase, one of which included testimony from the president of Forage Genetics on the scope of preliminary injunctive relief. It then determined that it should not conduct a hearing that would duplicate APHIS's efforts in preparing the EIS ordered by the court.

**[9]** The dissent is thus incorrect in stating that the district court failed to hold an evidentiary hearing because the district court held one hearing on the nature of the NEPA violation, two hearings on the scope of injunctive relief, which included testimony from Forage Genetics' president, and reviewed extensive documentary submissions relating to an appropriate remedy. What the district court did not do was to hold an additional evidentiary hearing to resolve the very disputes over the risk of environmental harm that APHIS would have to consider in the EIS. Nor is the dissent correct that the district court should have given conclusive deference to the limited mitigation measures APHIS proposed during the remedy

phase. The district court adopted all of APHIS's proposed conditions that pertained to alfalfa that was already planted. But because the court had already determined that future planting should be enjoined pending the EIS, the court declined to impose APHIS's conditions that would have permitted future planting. Under these circumstances, there was no abuse of discretion.

**[10]** The injunction involved only interim measures pending APHIS's compliance with NEPA, and the district court considered extensive remedies-phase evidence. The court did not err in declining to hold a further hearing before entering the injunction pending the agency's completion of environmental study the law undisputedly required it to perform before approving this product for unrestricted use.

The district court's order is **AFFIRMED**.

N. RANDY SMITH, Circuit Judge, dissenting:

The district court's failure to conduct the requisite evidentiary hearing prevents me from joining the majority's opinion. The majority correctly recognizes that the district court was required to conduct an evidentiary hearing before issuing a permanent injunction under Federal Rule of Civil Procedure 65 unless (1) the facts were undisputed; or (2) the adverse party expressly waived its right to an evidentiary hearing. *Charlton v. Estate of Charlton*, 841 F.2d 988, 989 (9th Cir. 1988). Despite recognizing this clear precedent, the majority affirms the district court's decision to proceed without the requisite evidentiary hearing, and, in so doing, creates an altogether new exception to the evidentiary hearing requirement we recognized in *Charlton*.

The majority acknowledges that the facts were sharply disputed by the parties. To be sure, the parties disputed almost

every element of the facts underlying the proposed injunction. Specifically, the parties disputed the risk of genetic contamination that could occur if the district court did not enjoin the further planting of Roundup Ready alfalfa while APHIS prepared the EIS. Given that the parties disputed the facts underlying the need for, and scope of, any injunctive relief, the first recognized exception to the evidentiary hearing requirement was unavailable. *See Charlton*, 841 F.2d at 989.

The second recognized exception was unavailable too. As the district court noted, Monsanto and Forage Genetics requested an evidentiary hearing "apparently so the Court can assess the viability of its witnesses' opinions regarding the risk of contamination if APHIS's proposed conditions are imposed, as well as to resolve disputes with plaintiffs' witnesses." In discussing Monsanto's and Forage Genetics' request for an evidentiary hearing, the majority notes APHIS's failure to request an evidentiary hearing. This failure, however, is insignificant given that Monsanto and Forage Genetics already had made their request. Because the parties did not consent to proceed without an evidentiary hearing, the other recognized exception to the evidentiary hearing requirement was unavailable. *See id.* Given those facts, we should reverse to allow the district court to conduct an evidentiary hearing. But that is not what the majority does here.

The majority instead relies on *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 823 (9th Cir. 2002), to create an altogether new exception to the evidentiary hearing requirement. The majority reasons that, because the injunction will only last as long as it takes APHIS to conduct an EIS, this is not a typical permanent injunction requiring typical procedural safeguards. The majority next assumes that an evidentiary hearing would result in waste of agency resources, because the hearing would require consideration of the same issues that APHIS must resolve in conjunction with the EIS.

As the majority correctly recognizes, we affirmed the district court's refusal to conduct an evidentiary hearing in *Idaho*

*Watersheds* in light of the temporary nature of the injunction. But this case isn't *Idaho Watersheds.* There, the district court deferred to the agency's recommendations and expertise in granting a temporary injunction— thereby resulting in an efficient resolution pending completion of the agency determinations. Conversely, in this case, the district court expressly rejected APHIS's proposed injunction and independently fashioned a permanent injunction without the benefit of live testimony subject to the adversarial process. In its revised opinion, the majority notes that the court "deferred to the agency and adopted 'the relevant conditions proposed by the APHIS.' " What the district court did was defer to APHIS only with regard to its recommendations concerning the already planted RRA. No deference, however, was given to APHIS's proposal that "prior to APHIS'[s] completion of the EIS . . . RRA can be grown, harvested and used, provided it is in accordance with six stringent, science-based requirements designed to mitigate the potential environmental harms specified by this Court." By picking and choosing when to afford deference, the court's deference is tantamount to no deference at all. These shortcomings resulted in a critical failure by the district court and deprived the parties of important procedural rights when it came to shaping the scope of any potential injunction.

In its amended opinion, the majority states that the district court "held one hearing on the nature of the NEPA violation [and] two hearings on the scope of injunctive relief . . . ." While the majority would like to describe the hearings in that manner, the record does not confirm such a description. The record instead indicates that the district court held six hearings on motions by the parties. In five of these hearings, only argument by lawyers was heard. In one hearing Forage Genetics president Mark McCaslin was allowed to speak without notice to the parties or opportunity for cross-examination.

The majority argues that the district court didn't need to conduct an evidentiary hearing, because it held the aforemen-

tioned hearings, had documentary submissions, and had the benefit of this testimony from Mr. McCaslin. With due respect to both counsel and Mr. McCaslin, this falls far short of the standards we have articulated for a hearing prior to issuing an injunction. The hearings cited by the majority were simply arguments by counsel construing the written submissions and documentary evidence. Although helpful, argument by counsel and documentary submissions are no substitute for live testimony when it comes to determining the nature and extent of the alleged injury, where the balance of hardship lies, and the scope of the injunction. Based on this record, Mr. McCaslin's statement was little better than no testimony.

The district court could have used the evidentiary hearing to better ascertain the nature of the alleged injury and to further understand the balance of the hardships associated with the parties' varying proposals for injunctive relief. It didn't. The district court also could have used the hearing to test the merits of the parties' positions. An evidentiary hearing would have allowed for cross examination of the witnesses on their written testimony and submissions. Instead the district court rejected the agency's proposal and fashioned its own permanent injunction based on argument of counsel, the written record, and ad hoc testimony from Mr. McCaslin. These shortcomings are significant, because the district court might have reached a different result had it held an evidentiary hearing before reaching a decision.

In such a hearing, the district court did not need to resolve the very disputes over the risk of environmental harm that APHIS might resolve differently in an EIS—as the majority contends in its amended opinion. It only needed to decide, listening and observing the witnesses, what it would do in the mean time. The district court failed to do so.

The evidentiary hearing requirement is essential because it allows the district court an opportunity to consider the witnesses' credibility in the face of cross examination. That step

is what justifies the abuse of discretion standard of review under which we consider a district court's decision to grant or deny injunctive relief. If a district court skips the requisite evidentiary hearing, we have exactly the same record on appeal as the district court did below. In that circumstance, I see no reason to afford the district court any discretion when reviewing its decision to grant or deny an injunction. For that reason, I consider it to be an abuse of discretion for a district court not to hold an evidentiary hearing unless the case fits in either of the recognized *Charlton* exceptions or the district court accepts the agency's proposal for temporary injunctive relief, as occurred in *Idaho Watersheds*.

Based on this record, I have serious concerns about the scope of the injunction entered by the district court. At best, the record reflects sparse evidence of hay-to-hay gene transmission of RRA alfalfa in some areas of the country under certain planting conditions. Further, I see no good evidence of hay-to-seed or seed-to-seed gene transmission. Yet the district court entered a nationwide injunction on the planting of Roundup Ready alfalfa while APHIS completes an EIS. This nationwide injunction has severe economic consequences for Monsanto, Forage Genetics, and for the farmers and distributors who planned on RRA alfalfa being available. I would be more comfortable with a nationwide injunction had the district court held an evidentiary hearing to consider live testimony, listened to cross examination, and resolved any credibility issues between the witnesses. But no such hearing occurred, and I therefore have no confidence in the need for a nationwide injunction pending completion of the EIS.

By affirming the district court's refusal to conduct an evidentiary hearing, the majority has created a third exception to the evidentiary hearing requirement. Under this decision, a district court now can forego conducting an evidentiary hearing simply because (1) the injunction may dissolve at some point and (2) the issues, to be raised at the hearing, overlap with the issues the agency must consider in making a final

decision regarding the controversy. Instead of giving deference to the agency's expertise, *see The Lands Council v. McNair*, ___ F.3d ___, 2008 WL 2640001, *4, *8-9 (9th Cir. 2008) (en banc), the majority gives deference to the district court, despite its wholesale rejection of the agency's proposal for an injunction and its failure to hold an evidentiary hearing. There aren't many environmental cases that don't fit into the majority's newly-created exception. This is a mistake, as it would eliminate a "significant procedural step[,]" *Charlton*, 841 F.2d at 989, without any real justification. I would instead remand so that the district court could conduct an evidentiary hearing on the merits and scope of the permanent injunction.