**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PEOPLE OF THE STATE OF
CALIFORNIA EX REL. BILL LOCKYER;
STATE OF NEW MEXICO, ex rel.
PATRICIA A. MADRID, Attorney
General for the State of New
Mexico; STATE OF OREGON, by and
through Theodore Kulongoski,
Governor; STATE OF WYOMING; THE
WILDERNESS SOCIETY; CALIFORNIA
WILDERNESS COALITION; FORESTS
FOREVER FOUNDATION; NORTHCOAST
ENVIRONMENTAL CENTER; OREGON
NATURAL RESOURCES COUNCIL
FUND; SITKA CONSERVATION
SOCIETY; SISKIYOU REGIONAL
EDUCATION PROJECT; BIODIVERSITY
CONSERVATION ALLIANCE; SIERRA
CLUB; NATIONAL AUDUBON SOCIETY;
GREATER YELLOWSTONE COALITION,
CENTER FOR BIOLOGICAL DIVERSITY;
ENVIRONMENTAL PROTECTION
INFORMATION CENTER; KLAMATH-
SISKIYOU WILDLANDS CENTER;
DEFENDERS OF WILDLIFE; PACIFIC
RIVERS COUNCIL; IDAHO
CONSERVATION LEAGUE; HUMANE
SOCIETY OF THE UNITED STATES;
CONSERVATION NW; GREENPEACE,
                    *Plaintiffs-Appellees,*

v.

U.S. DEPARTMENT OF AGRICULTURE;
DALE BOSWORTH, Chief of the U.S.
Forest Service; MIKE JOHANNS,
Secretary of the Department of
Agriculture; MARK REY, Under
Secretary for Natural Resources &
Environment of the Department of
Agriculture; UNITED STATES FOREST
SERVICE,
          *Defendants-Appellants,*
          and

AMERICAN COUNCIL OF SNOWMOBILE
ASSOCIATIONS; BLUERIBBON
COALITION; CALIFORNIA ASSOCIATION
OF 4 WHEEL DRIVE CLUBS UNITED
FOUR WHEEL DRIVE ASSOCIATIONS;
SILVER CREEK TIMBER COMPANY,
INC.,
          *Defendant-intervenors,*
          v.

STATE OF WASHINGTON,
          *Plaintiff-intervenor-Appellee.*

No. 07-15613

D.C. No.
CV-05-03508-EDL

THE PEOPLE OF THE STATE OF
CALIFORNIA, EX REL. BILL LOCYKER
ATTORNEY GENERAL; STATE OF NEW
MEXICO, ex rel; PATRICIA A.
MADRID, Attorney General for the
State of New Mexico; STATE OF
OREGON, by and through Theodore
Kulongoski, Governor; STATE OF
WYOMING; THE WILDERNESS
SOCIETY; CALIFORNIA WILDERNESS
COALITION; FORESTS FOREVER
FOUNDATION; NORTHCOAST
ENVIRONMENTAL CENTER; OREGON
NATURAL RESOURCES COUNCIL
FUND; SITKA CONSERVATION
SOCIETY; SISKIYOU REGIONAL
EDUCATION PROJECT; BIODIVERSITY
CONSERVATION ALLIANCE; SIERRA
CLUB; NATIONAL AUDUBON SOCIETY;
GREATER YELLOWSTONE COALITION
CENTER FOR BIOLOGICAL DIVERSITY;
ENVIRONMENTAL PROTECTION
INFORMATION CENTER; KLAMATH-
SISKIYOU WILDLANDS CENTER;
DEFENDERS OF WILDLIFE; PACIFIC
RIVERS COUNCIL; IDAHO
CONSERVATION LEAGUE; HUMANE
SOCIETY OF THE UNITED STATES;
CONSERVATION NW; GREENPEACE,
                    *Plaintiffs-Appellees,*

v.

United States Department of
Agriculture; Dale Bosworth,
Chief of the U.S. Forest Service;
Mike Johanns, Secretary of the
Department of Agriculture; Mark
Rey, Under Secretary for Natural
Resources & Environment of the
Department of Agriculture; United
States Forest Service,
*Defendants,*

American Council of Snowmobile
Associations; Blueribbon
Coalition; California
Association of 4 Wheel Drive
Clubs; United Four Wheel Drive
Associations,
*Defendant-intervenors,*

and

Silver Creek Timber Company,
Inc.,
*Defendant-intervenor-Appellant,*

v.

State of Washington,
*Plaintiff-intervenor-Appellee.*

No. 07-15614
D.C. No.
CV-05-03508-EDL
Northern District of
California,
San Francisco

PEOPLE OF THE STATE OF CALIFORNIA
EX REL. BILL LOCKYER; STATE OF
NEW MEXICO, ex rel. PATRICIA A.
MADRID, Attorney General for the
State of New Mexico; STATE OF
OREGON, by and through Theodore
Kulongoski, Governor; STATE OF
WYOMING; THE WILDERNESS
SOCIETY; CALIFORNIA WILDERNESS
COALITION; FORESTS FOREVER
FOUNDATION; NORTHCOAST
ENVIRONMENTAL CENTER; OREGON
NATURAL RESOURCES COUNCIL
FUND; SITKA CONSERVATION
SOCIETY; SISKIYOU REGIONAL
EDUCATION PROJECT; BIODIVERSITY
CONSERVATION ALLIANCE; SIERRA
CLUB; NATIONAL AUDUBON SOCIETY;
GREATER YELLOWSTONE COALITION,
CENTER FOR BIOLOGICAL DIVERSITY;
ENVIRONMENTAL PROTECTION
INFORMATION CENTER; KLAMATH-
SISKIYOU WILDLANDS CENTER;
DEFENDERS OF WILDLIFE; PACIFIC
RIVERS COUNCIL; IDAHO
CONSERVATION LEAGUE; HUMANE
SOCIETY OF THE UNITED STATES;
CONSERVATION NW; GREENPEACE,
                    *Plaintiffs-Appellees,*

v.

U.S. DEPARTMENT OF AGRICULTURE;
DALE BOSWORTH, CHIEF OF THE
U.S. FOREST SERVICE; MIKE
JOHANNS, Secretary of the
Department of Agriculture; MARK
REY, Under Secretary for Natural
Resources & Environment of the
Department of Agriculture; UNITED
STATES FOREST SERVICE,
　　　　　　　　　　*Defendants,*

SILVER CREEK TIMBER COMPANY,
INC.,
　　　　　　*Defendant-intervenor,*
　　　　　　　and

AMERICAN COUNCIL OF SNOWMOBILE
ASSOCIATIONS; BLUERIBBON
COALITION; CALIFORNIA ASSOCIATION
OF 4 WHEEL DRIVE CLUBS UNITED
FOUR WHEEL DRIVE ASSOCIATIONS,
　*Defendant-intervenors-Appellants,*

v.

STATE OF WASHINGTON,
　　　*Plaintiff-intervenor-Appellee.*

No. 07-15695

D.C. No.
CV-05-03508-EDL

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Elizabeth D. Laporte, Magistrate Judge, Presiding

Argued and Submitted
October 20, 2008—San Francisco, California

Filed August 5, 2009
Amended August 25, 2009

Before: Robert R. Beezer, Jay S. Bybee, and Carlos T. Bea,
Circuit Judges.

Opinion by Judge Beezer

## COUNSEL

Edmund G. Brown, Jr., and Claudia Polsky, California Department of Justice, Oakland, California, for plaintiff-appellee State of California.

Hardy Myers, Mary H. Williams, and David E. Leith, Office of the Oregon Attorney General, Salem, Oregon, for plaintiff-appellee State of Oregon.

Rob McKenna, Mary Sue Wilson, Joan M. Marchioro, and Sheila Lynch, Office of the Washington Attorney General, Olympia, Washington, for plaintiff-appellee State of Washington.

Gary King, Stephen Farris, and Judith Ann Moore, Office of the New Mexico Attorney General, Santa Fe, New Mexico, for plaintiff-appellee State of New Mexico.

Kristen L. Boyles, Earthjustice, Seattle, Washington, Timothy J. Preso, Earthjustice, Bozeman, Montana, and Thomas S. Waldo, Earthjustice, Juneau, Alaska, for plaintiff-appellees The Wilderness Society, California Wilderness Coalition, Forests Forever Foundation, Northcoast Environmental Center, Oregon Wild, Sitka Conservation Society, Siskiyou Regional Education Project, Biodiversity Conservation Alliance, Sierra Club, National Audubon Society, Greater Yellowstone Coalition, Center for Biological Diversity, Environmental Protection Information Center, Klamath-Siskiyou Wildlands Center, Defenders of Wildlife, Pacific Rivers Council, Idaho Conservation League, Humane Society of the United States, Conservation NW and Greenpeace.

Ronald J. Tenpas, David C. Shilton, and John L. Smeltzer, United States Department of Justice, Washington, D.C., for the defendant-appellant United States Department of Agriculture and United States Forest Service.

Paul A. Turcke and Carl J. Withroe, Moore Smith Buxton & Turcke, Chtd., Boise, Idaho, for the defendant-intervenor-appellants California Association of 4 Wheel Drive Clubs, United Four Wheel Drive Associations, American Council of Snowmobile Associations and the BlueRibbon Coalition.

Scott W. Horngren, Haglund Kelley Horngren Jones & Wilder, LLP, Portland, Oregon, and Dennis M. Wilson, Wilson Law, Sacramento, California, for defendant-appellant-intervenor Silver Creek Timber Company.

Bruce A. Salsburg, Jay Jerde, and Robert A. Nicholas, Office of the Wyoming Attorney General, for amicus curiae State of Wyoming.

Mick McGrath and Candace F. West, Office of the Montana Attorney General, Helena, Montana, for amicus curiae State of Montana.

G. Steven Rowe and Mark Randlet, Office of the Maine Attorney General, Augusta, Maine, for amicus curiae State of Maine.

---

## ORDER

The opinion filed on August 5, 2009, is hereby amended to include case number 07-15614.

The filing of this order does not affect the deadline for the submission of petitions for rehearing, which deadline will continue to be calculated as of the date of the original opinion.

---

## OPINION

BEEZER, Circuit Judge:

This case involves procedural challenges to a United States Forest Service Rule known as the State Petitions Rule. The

plaintiffs, several states and various environmentalist organizations, contend that the State Petitions Rule was promulgated without proper process and that it is invalid. They urge us to affirm the district court, which set aside the State Petitions Rule and reinstated the Roadless Area Conservation Rule, more commonly known as the "Roadless Rule," pending Forest Service compliance with the National Environmental Policy Act and the Endangered Species Act.

We agree with the plaintiffs that the promulgation of the State Petitions Rule effected a repeal of the Roadless Rule, which we previously found to afford greater protections to the nation's roadless areas than those the individual forest plans provide. The Forest Service's use of a categorical exemption to repeal the nationwide protections of the Roadless Rule and to invite States to pursue varying rules for roadless area management was unreasonable. It was likewise unreasonable for the Forest Service to assert that the environment, listed species, and their critical habitats would be unaffected by this regulatory change.

We affirm the district court's order permanently enjoining the implementation of the State Petitions Rule because the Forest Service violated the National Environmental Policy Act and the Endangered Species Act when it promulgated the State Petitions Rule. We further conclude that the district court did not abuse its discretion in ordering the Forest Service to comply with the Roadless Rule as a remedy for these procedural shortcomings.

# I

Before turning to the merits of this dispute, we will provide an overview of the factual background and procedural history of the instant litigation. We will also resolve disputes about the ripeness of the plaintiffs' claims and the appropriate standard of review to apply to them.

## A

The State Petitions Rule is the most recent effort by the Forest Service to address the management of roadless areas in the national forests. In order to appreciate this rule and the plaintiffs' challenges to its validity, one must have a general understanding of the land management measures that preceded it.

The U.S. National Forest System consists of approximately 192 million acres of national forests, national grasslands, and related areas. The Forest Service manages these lands under several federal statutes, including the National Forest Management Act, 16 U.S.C. §§ 1600-14. Under the National Forest Management Act, the Forest Service must develop and periodically revise an integrated land and resource management plan, commonly known as a "forest plan," for each unit of the National Forest System. 16 U.S.C. § 1604(a), (f); *see also Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 961 (9th Cir. 2002). Each forest plan is prepared by an inter-disciplinary team and must "provide for multiple use and sustained yield of the products and services obtained" from the forest unit and include coordination of uses relating to "outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness." 16 U.S.C. § 1604(e)(1), (f).

To achieve these objectives, forest plans typically divide a forest unit into different "management areas" that are subject to different goals, objectives, and management prescriptions. For example, a management area may be dedicated to recreation or to forest products. The Forest Service then may consider individual, site-specific projects consistent with that plan. *See, e.g.*, *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 729-30 (1998) (describing the method for proposing and adopting a site-specific logging project in a national forest). Activities proposed to occur within a management area must be consistent with the management-area prescriptions as well as with the prescriptions applicable to the entire forest unit.

*See* 16 U.S.C. § 1604(I); *see also Citizens for Better Forestry v. USDA*, 341 F.3d 961, 965-66 (9th Cir. 2003) (describing the tiered approach to forest land management and decision making at the national, regional, and site-specific levels).

In the 1970s, the Forest Service began to study and evaluate roadless areas in national forests. It developed an "inventory" of roadless areas, each larger than 5000 acres, to be considered by Congress for inclusion in the National Wilderness Preservation System. As a result of the reviews in the 1970s, subsequent large-scale assessments, and land and resource planning for individual forest units, there are now 58.5 million acres of the national forest identified as "inventoried roadless areas." These inventoried roadless areas are largely undeveloped, but not entirely without roads.[1]

From the late 1970s through the late 1990s, inventoried roadless areas were governed primarily by the individual forest plans developed under the National Forest Management Act. Nothing in that Act or any other federal statute obligates the Forest Service to manage inventoried roadless areas as a distinct unit of administration or resource value. Most forest plans provided for extractive uses, including logging, mining, oil and gas development, and construction of off-road vehicle routes, on at least some portion of what are classified as inventoried roadless areas.

In the late 1990s, the Forest Service began to reevaluate its approach to roadless area management. On October 13, 1999, President Clinton directed the Forest Service to initiate a nationwide plan to protect the roadless areas in the national

---

[1]"Some inventoried roadless areas have roads because: (1) the criteria used by the Forest Service when it made its inventory of 'roadless' areas included some areas with roads; and (2) after the Forest Service completed its inventory in the 1970s, some roads were built on inventoried roadless land." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1105 n.4 (9th Cir. 2002).

forests. Within a week of this directive, the Forest Service began working on what would ultimately become the Roadless Area Conservation Rule, or "Roadless Rule."[2]

The Forest Service promulgated the Roadless Rule on January 5, 2001. It was an adaptation of one of several options for roadless area management studied in the Final Environmental Impact Statement issued in November 2000. Subject to limited exceptions, the Roadless Rule would prohibit road construction, reconstruction, and timber harvest in roadless areas. Roadless Area Conservation, 66 Fed. Reg. 3244 (Jan. 12, 2001). It did not displace the forest plans used for forest management; rather, the Roadless Rule superseded any restrictions on inventoried roadless areas that were less stringent. *See id.* at 3250; State Petitions for Inventoried Roadless Area Management, 70 Fed. Reg. 25,654, 25,656 (May 13, 2005).

Perhaps in response to, or in anticipation of, concerns that local decision making might be preferred, the Forest Service defended its categorical, programmatic approach to roadless area management:

> At the national level, Forest Service officials have the responsibility to consider the "whole picture" regarding the management of the National Forest System, including inventoried roadless areas. Local land management planning efforts may not always recognize the national significance of inventoried roadless areas and the values they represent in an increasingly developed landscape. If management decisions for these areas were made on a case-by-case basis at a forest or regional level, inventoried roadless areas and their ecological characteristics and social values could be incrementally reduced

---

[2]For a comprehensive discussion of the process leading up to the promulgation of the Roadless Rule, *see Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002).

through road construction and certain forms of timber harvest. Added together, the nation-wide results of these reductions could be a substantial loss of quality and quantity of roadless area values and characteristics over time.

66 Fed. Reg. at 3246.

The Roadless Rule was to go into effect on March 13, 2001, 66 Fed. Reg. 3244; however, because of a change in presidential administration, the effective date of the Roadless Rule was delayed for 60 days, or until May 12, 2001.

Two days before the Roadless Rule's postponed effective date, the United States District Court for the District of Idaho preliminarily enjoined the Forest Service from implementing "all aspects" of the rule. *Kootenai Tribe of Idaho v. Veneman*, No. 01-10, 2001 WL 1141275, at *2 (D. Idaho May 10, 2001). The Forest Service chose not to appeal this ruling, but environmentalist groups that had intervened in the suit mounted a successful appeal.

On December 12, 2002, the Ninth Circuit Court of Appeals reversed. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1126 (9th Cir. 2006). The majority evaluated in considerable detail the procedural challenges made against the Roadless Rule and concluded, on the record before it, that "it is plain that the Forest Service gave a 'hard look' at the complex problem presented." *Id.* at 1123. The majority concluded that the plaintiffs had not shown a substantial likelihood of success on their National Environmental Policy Act claims and that the balance of the hardships weighed against enjoining the Roadless Rule. *Id.* at 1123-26. The majority reversed the district court's issuance of the preliminary injunction. *Id.* at 1126. The court's mandate issued in April 2003, and the Roadless Rule went into effect nationwide.

Within months, another court enjoined the Roadless Rule. *Wyoming v. USDA*, 277 F. Supp. 2d 1197 (D. Wyo. 2003). On

July 14, 2003, the United States District Court for the District of Wyoming held that the Roadless Rule was promulgated in violation of the National Environmental Policy Act and the Wilderness Act and ordered that it "be permanently enjoined." *Id.* at 1239. As in the Idaho litigation, the Forest Service did not appeal to the Tenth Circuit, but the environmentalist intervenors did.

The day after oral argument before the Tenth Circuit, the "Forest Service announced the adoption of a final rule replacing the Roadless Rule." *Wyoming v. USDA*, 414 F.3d 1207, 1211 (10th Cir. 2005). Because the new rule—the State Petitions Rule—eliminated "[t]he portions of the Roadless Rule that were substantively challenged," the Tenth Circuit concluded that "to render a decision on the validity of the now nonexistent Roadless Rule would constitute a textbook example of" an advisory opinion. *Id.* at 1212. The Tenth Circuit dismissed the appeal for want of jurisdiction and vacated the district court's judgment. *Id.* at 1214.

The rule announced by the Forest Service on May 5, 2005 —the State Petitions Rule—is the primary focus of this appeal.

The Forest Service began working on what would become the State Petitions Rule in July 2001, when the appeal of the Idaho preliminary injunction against the Roadless Rule was pending before the Ninth Circuit. Roadless Area Conservation, 66 Fed. Reg. 35,918 (July 10, 2001). In its Advance Notice of Proposed Rulemaking in the Federal Register, the Forest Service expressed its intention to reexamine the Roadless Rule and move forward with a "responsible and balanced approach" to roadless area management that would fairly address concerns raised by those affected by the Roadless Rule. *Id.*

The Forest Service issued a Notice of Proposed Rulemaking for the State Petitions Rule in July 2004. *See* State Peti-

tions for Inventoried Roadless Area Management, 69 Fed. Reg. 42,636 (July 16, 2004). The Forest Service determined that "a State petitioning process that will allow State-specific consideration of the needs of [roadless] areas [was] an appropriate solution to address the challenges of roadless area management." *Id.* at 42,638.

Following an extended period of public comment, the Forest Service issued the final State Petitions Rule. State Petitions for Inventoried Roadless Area Management, 70 Fed. Reg. 25,654 (May 13, 2005). The rule revised Part 294 of Title 36 of the Code of Federal Regulations to remove the text of the Roadless Rule and insert in its place provisions establishing an eighteen-month window during which states could petition for state-specific roadless area protections.[3] *Id.* at 25,661.

The final provision of the State Petitions Rule is a "severability clause." 36 C.F.R. § 294.18. According to the Forest Service, this

---

[3]Under the State Petitions Rule, the governor of any state or territory "may petition the Secretary of Agriculture to promulgate regulations establishing management requirements for all or any portion of National Forest System inventoried roadless areas within that State or territory." 36 C.F.R. § 294.12. The rule sets forth the required content of any such petition (*id.* § 294.14), establishes a National Advisory Committee to review petitions (*id.* § 294.15), and sets time limits for the Secretary to "accept or decline" petitions (*id.* § 294.13). If a petition is accepted, the Secretary will instruct the Forest Service "to initiate notice and comment rulemaking." *Id.* § 294.16. The ultimate decision making authority as to any state-specific inventoried roadless area remains with the Secretary. *Id.*

After the eighteen-month window lapses, the "general petitioning process for the approval, amendment, or repeal of rules (7 C.F.R. § 1.28) would remain available . . . . Management requirements established through the land management planning process would always be available for review and adjustment through subsequent plan revisions or amendments." 70 Fed. Reg. at 25,657.

provision . . . responds to public comment expressing concerns and confusion regarding the status of the prior roadless rule that was set aside by the Federal District Court in Wyoming. The Department [of Agriculture] believes that adopting this new rule resolves the matter by establishing a new process for addressing inventoried roadless area . . . . Regardless of these lawsuits [surrounding the Roadless Rule], the Department has concluded that the 2001 rule's inflexible "one-size fits-all" nationwide rulemaking approach is flawed and there are better means to achieve protection of roadless area values. The Department wishes to make its intent clear that should all or any part of this regulation be set aside, the Department does not intend that the prior rule be reinstated, in whole or in part.

70 Fed. Reg. at 25,655-56.

In its decision memorandum, the Forest Service explained that it had designated this rule for categorical exclusion under the National Environmental Policy Act ("NEPA"). 70 Fed. Reg. at 25,660. The Forest Service specifically cited a provision from the Forest Service Handbook ("FSH"), which provision "excludes from documentation in an environmental assessment or impact statement 'rules, regulations, or policies to establish Service-wide administrative procedures, program processes, or instructions.' " *Id.* at 25,660 (citing FSH 1909.15, § 31.1b; 57 Fed. Reg. 43,208 (Sept. 18, 1992)). The Forest Service explained that the "final rule is merely procedural in nature and scope and, as such, has no direct, indirect, or cumulative effect on the environment." *Id.* The Forest Service also referred to the Draft and Final Environmental Impact Statements that were prepared as part of the Roadless Rule's development and explained that the "environmental impacts associated with not implementing the enjoined 2001 roadless rule are essentially those disclosed and discussed for

the no action alternative displayed in the [Final Environmental Impact Statement]." *Id.*

Much like the Roadless Rule, the State Petitions Rule was almost immediately met with litigation.

**B**

This appeal arises from two consolidated district court actions that challenged the U.S. Department of Agriculture ("USDA") and Forest Service's promulgation of the State Petitions Rule as violating certain requirements of the National Environmental Policy Act, the Endangered Species Act, and the Administrative Procedure Act. The plaintiffs in the district court cases were the states of California, New Mexico, and Oregon (collectively the "state plaintiffs"), and The Wilderness Society and other environmental advocacy organizations[4] (collectively the "environmental plaintiffs"). The State of Washington intervened as a plaintiff. Silver Creek Timber Company intervened on behalf of the Forest Service. Also intervening on behalf of the Forest Service as to the remedy phase were the American Council of Snowmobile Associations, the Blue Ribbon Coalition, California Association of 4 Wheel Drive Clubs, and United Four Wheel Drive Association.[5] There were amici curiae for both sides.[6]

---

[4]These organizations are the California Wilderness Coalition, Forests Forever Foundation, Northcoast Environmental Center, Oregon Wild (formerly, Oregon Natural Resources Council Fund), Sitka Conservation Society, Siskiyou Regional Education Project, Biodiversity Conservation Alliance, Sierra Club, National Audubon Society, Greater Yellowstone Coalition, Center for Biological Diversity, Environmental Protection Information Center, Klamath-Siskiyou Wildlands Center, Defenders of Wildlife, Pacific Rivers Council, Idaho Conservation League, Humane Society of the United States, Conservation NW, and Greenpeace.

[5]These parties were also amici curiae with respect to the issues going to the merits.

[6]Maine and Montana were amici curiae in support of the plaintiffs. Alaska, Idaho, Wyoming, and the American Forest Resource Council were amici curiae in support of the Forest Service.

Collectively, the plaintiffs alleged that the USDA and Forest Service violated (1) the National Environmental Policy Act by relying on a categorical exclusion when promulgating the State Petitions Rule; (2) Section 7 of the Endangered Species Act by promulgating the State Petitions Rule without fulfilling the Act's consultation requirements; and (3) the "rationality" requirement of the Administrative Procedure Act by "failing to articulate a [p]urpose and [n]eed for rescission of the Roadless Rule."

On September 19, 2006, the district court granted summary judgment for the plaintiffs and denied summary judgment for the USDA.[7] The district court held that the USDA violated the National Environmental Policy Act and the Endangered Species Act.[8] *Lockyer*, 459 F. Supp. 2d at 909, 912. As a remedy for these violations, the district court permanently enjoined the State Petitions Rule and reinstated the Roadless Rule. *Id.* at 919.

Under the court's analysis, the State Petitions Rule triggered the National Environmental Policy Act's environmental analysis requirement because the rule permanently removed the Roadless Rule's substantive protections. *Id.* at 895-97 The court reasoned that the elimination of a major nationwide land management program would be sufficient to trigger environmental analysis; here, the Forest Service eliminated such a program and replaced it with a far more varied and potentially less protective land management regime. *Id.* at 898-901. The court rejected the USDA's argument that replacing the Roadless Rule was a paper exercise. *Id.* at 895.

---

[7]The district court issued a slightly revised amended opinion and order on October 11, 2006. *California ex rel. Lockyer v. USDA*, 459 F. Supp. 2d 874 (N.D. Cal. 2006).

[8]Although some of its analysis applies to the plaintiffs' Administrative Procedure Act claim, the district court specifically did not reach that issue. *Lockyer*, 459 F. Supp. 2d at 912-13.

The court also focused on the language of the categorical exclusion used by the Forest Service to implement the rule, reasoning that the replacement of the Roadless Rule with the State Petitions Rule was not the type of "routine" administrative action for which the categorical exclusion existed. *Id.* at 901-02. The district court highlighted additional problems with the rulemaking process, such as the scant discussion given to resource conditions or other extraordinary circumstances that might make the categorical exclusion unavailable. *Id.* at 902-03. Ultimately, the district court concluded that "[t]he Forest Service's proposed interpretation of this categorical exclusion in this case is clearly erroneous and its use in promulgating the State Petitions Rule was arbitrary and capricious." *Id.* at 902.

The district court's National Environmental Policy Act discussion overlapped, in part, with its analysis of the plaintiffs' Endangered Species Act claims. *Id.* at 911. The court explained that "it would strain credulity to hold that the repeal of the [Roadless Rule] protections in [inventoried roadless areas] would not have *any* effect, as that term is interpreted for purposes of [the Endangered Species Act], on the numerous species that make their homes in [inventoried roadless areas]." *Id.*

In crafting the appropriate remedy, the district court noted the substantial nature of the procedural violations, balanced the equities, considered the public interest, and determined that the proper course was to reinstate the Roadless Rule pending the USDA's compliance with the National Environmental Policy Act and the Endangered Species Act. *Id.* at 913-19.

On appeal, the defendants challenge the district court's holding that environmental analysis and consultation was required under either the National Environmental Policy Act or the Endangered Species Act. The defendants contend that the USDA appropriately determined that the State Petitions

Rule was procedural and would not have any effect on the environment. The defendants also contend that the district court abused its discretion by reinstating the Roadless Rule, which the USDA specifically indicated it did not want reinstated should any challenge to the State Petitions Rule be successful.

## C

The district court exercised federal question jurisdiction over the instant suit under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 636(c)(3).

The parties dispute whether the plaintiffs' claims are ripe for adjudication. Specifically, defendant-intervenor-appellant California Association of 4 Wheel Drive Clubs contends that the State Petitions Rule merely presents a starting point for future rulemaking, such that "any alleged NEPA-based procedural injury cannot be identified until a state files a petition."

[1] Ripeness is a question of law reviewed de novo. *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). Ripeness serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). "In determining whether a case satisfies prudential requirements for ripeness, we consider two factors: 'the fitness of the issues for judicial decision,' and 'the hardship to the parties of withholding court consideration.' " *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1211-12 (9th Cir. 2006) (quoting *Abbott Labs.*, 387 U.S. at 149).

[2] The district court considered these factors and correctly concluded that the suit was ripe for adjudication. *Lockyer*, 459

F. Supp. 2d at 890-92. Judicial consideration of this dispute would not interfere with further administrative action with respect to the State Petitions Rule, which is a final rule that has been published in the Federal Register. Nor is additional factual development required under the plaintiffs' theory of the case, which is that the promulgation of the State Petitions Rule improperly removed the substantive protections afforded to inventoried roadless areas under the Roadless Rule.

[3] The Supreme Court has held that "a person with standing who is injured by a failure to comply with NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." *Ohio Forestry Ass'n*, 523 U.S. at 737. With this suit, the plaintiffs are taking advantage of what may be their only opportunity to challenge the State Petitions Rule on a nationwide, programmatic basis. Therefore, we agree with the district court that this dispute is ripe for adjudication.

## D

We review the district court's grant of summary judgment de novo. *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 891 (9th Cir. 2002). We review the district court's grant of permanent injunctive relief for abuse of discretion. *ACLU of Nev. v. Lomax*, 471 F.3d 1010, 1018 (9th Cir. 2006).

We generally review the USDA's compliance with the National Environmental Policy Act and the Endangered Species Act under the "arbitrary and capricious" standard of the Administrative Procedure Act. *Id.* (citing 5 U.S.C. § 706(2)(A)). An "agency's interpretation of the meaning of its own categorical exclusion should be given controlling weight unless plainly erroneous or inconsistent with the terms used in the regulation." *Alaska Ctr. for the Env't v. U.S. Forest Serv.*, 189 F.3d 851, 857 (9th Cir. 1999). Similarly, an agency's "no effect" determination under the Endangered Species Act must be upheld unless arbitrary and capricious.

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100
F.3d 1443, 1448 (9th Cir. 1996).

Ninth Circuit jurisprudence distinguishes between the level
of deference afforded to agency decisions that are primarily
legal in nature and that afforded to decisions that are factual.
*Alaska Wilderness Recreation & Tourism Ass'n v. Morrison*,
67 F.3d 723, 727 (9th Cir. 1995) ("We find that it makes
sense to distinguish the strong level of deference we accord
an agency in deciding factual or technical matters from that
to be accorded in disputes involving predominately legal
questions."); *see Northcoast Envtl. Ctr. v. Glickman*, 136 F.3d
660, 667 (9th Cir. 1998) (holding that "the less deferential
standard of 'reasonableness' applies to threshold agency deci-
sions that certain activities are not subject to NEPA's proce-
dures"). In the Ninth Circuit, "[a]n agency's threshold
decision that certain activities are not subject to NEPA is
reviewed for reasonableness." *Kern v. U.S. Bureau of Land
Mgmt.*, 284 F.3d 1062, 1070 (9th Cir. 2002) (citing *North-
coast*, 136 F.3d at 667). The Supreme Court has noted, how-
ever, that "the difference between the 'arbitrary and
capricious' and 'reasonableness' standards is not of great
pragmatic consequence." *Marsh v. Or. Natural Res. Council*,
490 U.S. 360, 377 n.23 (1989).

## II

We now turn to the merits of the plaintiffs' National Envi-
ronmental Policy Act and Endangered Species Act claims and
to the appropriateness of the remedy crafted by the district
court.

## A

The National Environmental Policy Act "is our basic
national charter for protection of the environment." *N. Idaho
Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d
1147, 1153 (9th Cir. 2008) (quoting *Ctr. for Biological Diver-*

*sity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1185 (9th Cir. 2008)). It "is a procedural statute intended to ensure environmentally informed decision-making by federal agencies." *Tillamook County v. U.S. Army Corps of Eng'rs*, 288 F.3d 1140, 1143 (9th Cir. 2002). The National Environmental Policy Act "does not 'mandate particular results, but simply provides the necessary process to ensure that federal agencies take a hard look at the environmental consequences of their actions.' " *High Sierra Hikers Ass'n*, 390 F.3d 630, 639 (9th cir. 2004) (quoting *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1070 (9th Cir. 2002)).

**[4]** The Act requires that an environmental impact statement be prepared for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). The threshold that triggers the requirement for environmental analysis under the National Environmental Policy Act is relatively low: "It is enough for the plaintiff to raise substantial questions whether a project may have a significant effect on the environment." *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th Cir. 1998) (citation and internal quotation marks omitted). The purpose of an environmental impact statement is to provide full and fair discussion of significant environmental impacts and to inform decision makers and the public of reasonable alternatives that would minimize adverse environmental impacts. 40 C.F.R. § 1502.1.

**[5]** An environmental impact statement is not always required to ensure that an agency has taken the requisite "hard look" at the potential environmental effects of its activities; rather, under regulations adopted by the Council on Environmental Quality, federal agencies may document compliance with the National Environmental Policy Act for any action by: (1) preparing an environmental impact statement; (2) preparing a less extensive environmental assessment and making a finding of no significant impact on the environment; or (3) documenting that the action falls within an established cate-

gorical exclusion. *See* 40 C.F.R. § 1501.4; *see also West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 926-27 (9th Cir. 2000).

**[6]** The Council on Environmental Quality has defined "categorical exclusion" to mean "a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations." 40 C.F.R. § 1508.4; *see also id.* § 1507.3(b)(2)(ii) (requiring agencies to adopt NEPA procedures including categorical exclusions). The definition of "categorical exclusion" also contains a mandate that an agency make allowances for "extraordinary circumstances in which a normally excluded action may have a significant environmental effect." 40 C.F.R. § 1508.4. When an action falls within a categorical exclusion and an agency reasonably determines that there are no extraordinary circumstances, further documentation under the National Environmental Policy Act is unnecessary. *California v. Norton*, 311 F.3d 1163, 1177 (9th Cir. 2002).

The Forest Service has adopted various categorical exclusions as part of its Forest Service Handbook. FSH 1909.15. By direction of the Forest Service Chief,

> The following categories of routine administrative, maintenance, and other actions normally do not individually or cumulatively have a significant effect on the quality of the human environment . . . and, therefore, may be categorically excluded from documentation in an [environmental impact statement] or an [environmental assessment] unless scoping indicates extraordinary circumstances . . . exist:
>
>     . . . .

> 2. Rules, regulations, or policies to establish Service-wide administrative procedures, program processes, or instructions.

FSH 1909.15, § 31.1b, ¶ 2. The Forest Service Handbook also includes a list of resource conditions that "should be considered in determining whether extraordinary circumstances related to [a] proposed action warrant further analysis and documentation in an [environmental analysis] or [environmental impact statement]." FSH 1909.15, § 30.3, ¶ 2. These conditions include: "Federally listed threatened or endangered species or designated critical habitat, species proposed for Federal listing or proposed critical habitat, . . . Forest Service sensitive species" and "[i]nventoried roadless areas." *Id.* "The mere presence of one or more of these resource conditions does not preclude use of a categorical exclusion. It is the degree of the potential effect of a proposed action on these resource conditions that determines whether extraordinary circumstances exist." *Id.*

The USDA characterized the State Petitions Rule as administrative only and without direct, indirect, or cumulative effects on the environment. 70 Fed. Reg. at 25,660. Because of its "procedural" nature, the USDA invoked the Forest Service's categorical exclusion from environmental analysis for "[r]ules, regulations, or policies to establish Service-wide administrative procedures, program processes, or instructions." *Id.*

The district court rejected this "procedural only" argument because the argument failed to account for the fact that the State Petitions Rule, when it was promulgated, specifically removed the Roadless Rule from the Code of Federal Regulations. *Lockyer*, 459 F. Supp. 2d at 894-96; *see also* 70 Fed. Reg. at 25,661 ("Subpart B [the Roadless Rule] is revised to read as follows: . . . ."). The district court reasoned that the replacement of the Roadless Rule's uniform substantive protections with a less protective and more varied land manage-

ment regime would qualify as "substantive" action and would meet the relatively low threshold to trigger some level of environmental analysis under the National Environmental Policy Act. *Lockyer*, 459 F. Supp. 2d at 894-96. The district court also found the USDA's reliance on the Wyoming district court's injunction to be misplaced. *See, e.g.*, *id.* at 897 ("Defendants cannot have it both ways, that is, take deliberate action that moots a pending appeal, triggering vacatur, yet rely on the vacated decision to avoid compliance with procedures mandated by environmental laws.").

We agree with the district court that the USDA's characterization of the State Petitions Rule as "merely procedural in nature and scope" was unreasonable. *See* 70 Fed. Reg. at 25,660.

**[7]** Like the district court, we are cognizant that we do not write on a blank slate. In *Kootenai Tribe v. Veneman*, 313 F.3d 1094 (9th Cir. 2002), we explored the beneficial environmental effects the Roadless Rule would have on inventoried roadless areas. The majority in *Kootenai Tribe* remarked upon the substantive differences between localized forest management under the individual forest plans and the uniform nationwide protections imposed by the Roadless Rule:

> Whatever protections of the involved environmental interests remain in the absence of the Roadless Rule, there can be no doubt that the 58.5 million acres subject to the Roadless Rule, if implemented, would have greater protection if the Roadless Rule stands.
>
>     . . . .
>
> This is an unusual case where an action, cessation of road development and repair in certain areas of our national forests, is being undertaken for the primary purpose of conservation, and the resulting benefit of the environment. There can be no serious argument

that restrictions on human intervention in these wilderness areas will not result in immeasurable benefits from a conservationist standpoint.

313 F.3d at 1110, 1124-25. Thus, the *Kootenai Tribe* majority found that the Roadless Rule provided greater substantive protections to roadless areas than the individual forest plans it superseded. The majority also found that "the reduction in human intervention that would result from the Roadless Rule actually does alter the environmental status quo . . . . By altering how the Forest Service manages inventoried roadless areas, the Roadless Rule will have a demonstrable impact on the physical environment." *Id.* at 1115.

We are bound by the findings of *Kootenai Tribe*, and we reject the USDA's arguments that the Roadless Rule was never "meaningfully" in force and that it could not have altered the status quo.[9] The Roadless Rule was legally valid for the seven months after the opinion in *Kootenai Tribe*. From the time our mandate issued to when the United States District Court for the District of Wyoming issued its injunction, the Roadless Rule governed the roadless area management of the national forests. The USDA asserts that the period between injunctions "was insufficient to make any meaningful difference in *forest planning*. This is so because . . . development activities . . . require many months or years to plan, evaluate, and implement." This argument misses the mark. That the Roadless Rule did not interfere with forest *planning* measures does not mean that the months of limited human intervention it facilitated were without beneficial effect on roadless areas and their complex ecosystems.

---

[9]The USDA provides little, if any, precedent supporting a "meaningfully in force" standard. We can envision situations where such a standard would defeat the purposes of the National Environmental Policy Act and the Endangered Species Act. For example, an incoming administration might conclude that many of the outgoing administration's regulations were not in place long enough to "make any meaningful difference" and simply set them aside.

**[8]** The USDA argues that its actions were not a "repeal" of the Roadless Rule, but rather amounted to a reasonable response to the agency being "stopped in its tracks" first by the improperly issued Idaho preliminary injunction and then by the Wyoming permanent injunction. We are not persuaded by this argument: the promulgation of the State Petitions Rule necessarily encompassed the permanent repeal of the Roadless Rule's substantive protections.

**[9]** The USDA plainly intended to free itself of any future constraints imposed by the Roadless Rule. Most obviously, when the final State Petitions Rule was published in the Federal Register, it "revised" subpart B of 36 C.F.R. § 294, which contained the Roadless Rule, in its entirety. *See* 70 Fed. Reg. at 25,661 ("[F]or the reasons set forth in the preamble, the Department of Agriculture amends part 294 of title 36 of the Code of Federal Regulations as follows: . . . Subpart B is revised to read as follows . . . ."). The State Petitions Rule included a "severability clause" that the USDA emphasized was to "make its intent clear that should all or any part of this regulation be set aside, the Department does not intend that the prior rule be reinstated, in whole or in part." *Id.* at 25,656; *see also* 36 C.F.R. § 294.18 (severability clause).

In its decision memorandum announcing the final rule, the USDA discussed its dissatisfaction with the Roadless Rule and highlighted its rejection of the Roadless Rule's "inflexible 'one-size-fits-all' nationwide rulemaking approach." 70 Fed. Reg. at 25,656. The USDA's internal correspondence, notice of proposed rule making, decision memorandum, and filings with this court repeatedly recognize that the State Petitions Rule "replaced" the Roadless Rule.[10] Whether one calls it a

---

[10]The Forest Service also represented to the Tenth Circuit Court of Appeals that:

> [T]he 2001 [Roadless] Rule at issue in this case has now been wholly superceded by the United States Department of . . . .

"replacement" or a "repeal," the end result is the same: the USDA took deliberate action to prevent appellate review of the Wyoming injunction and to free itself from the restrictions the Roadless Rule would impose on roadless area management if the injunction were lifted.

**[10]** Given the USDA's repeated acknowledgment of its intent to repeal—or "replace"—the Roadless Rule, that the State Petitions Rule accomplished little else supports our conclusion that a primary purpose of the State Petitions Rule was taking substantive environmental protections off the books. As defendant-intervenor-appellant Silver Creek Timber Company concedes, "a state could petition the Secretary [of Agriculture] for a rule regarding roadless [area] management under 5 U.S.C. § 553(e) *with or without* the state petition rule."[11] Defendant-intervenor-appellant California Association of 4 Wheel Drive Clubs acknowledges that "one might persuasively argue the State Petitions rule is a specific, *but redundant*, clarification of the right to petition for rule making addressing roadless areas." The duplicative nature of the State Petitions Rule and the very limited duration of the state petitioning window (eighteen months) strongly suggest that the primary purpose of the State Petitions Rule was to eliminate permanently the Roadless Rule.

The USDA attempts to bolster its argument that the replacement of the Roadless Rule was simply a paper exercise by relying upon the Wyoming district court's permanent

---

While the Intervenor-Appellants seek to have the district court's decision invalidating the 2001 Rule overturned[,] any such decision is without legal consequence as the 2001 Rule has been replaced by the Forest Service. Thus, *even apart from the district court's ruling, the 2001 [Roadless] Rule can no longer govern management of roadless areas.*

[11]Section 553(e) provides that "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."

injunction. The USDA's conveniently crafted argument is as follows: the USDA could remove the Roadless Rule without environmental analysis because of the Wyoming injunction, and the Tenth Circuit could not review the propriety of the Wyoming injunction because the Roadless Rule no longer existed after the promulgation of the State Petitions Rule. The district court noted that this type of self-serving argument "leaves too much to the vicissitudes of the timing of litigation." We agree.

The most obvious problem with the USDA's reliance on the Wyoming injunction is that it was in the process of being appealed to the Tenth Circuit. Internal USDA documents reveal the agency's understanding that the promulgation of the State Petitions Rule was not legally compelled, but was in fact a choice from many options then available to the agency. In selecting a course of action, the USDA unreasonably ignored the possibility that the Tenth Circuit would reverse the United States District Court for the District of Wyoming and reinstate the Roadless Rule, in spite of the admitted uncertainty surrounding the Roadless Rule. *See* Roadless Area Protection, 69 Fed. Reg. 42,648 (July 16, 2004) ("There continues to be uncertainty [about the Roadless Rule's validity] as legal proceedings are ongoing and the ultimate outcome is far from certain."). Adding to the uncertainty is the fact that a panel of this court had rejected a preliminary injunction resting on many of the grounds upon which the Wyoming district court based its injunction.

In the context of this case, we cannot condone a marked change in roadless area management without environmental analysis because it was the USDA's preferred response to an untested district court injunction that was subject to possible reversal in a pending appeal.[12] This is not to suggest that an

---

[12]We note that the District of Wyoming was only one of several district courts in the nation presiding over Roadless Rule related litigation. *See* 69 Fed. Reg. at 42,648.

agency cannot make decisions or promulgate rules while challenges to earlier rules wind their way through the appellate process. We simply find unreasonable, in the midst of this admitted uncertainty, the USDA's position that the Wyoming injunction permanently removed all protections afforded under the Roadless Rule in all jurisdictions and that the State Petitions Rule's elimination of the Roadless Rule from the books was merely a paper exercise.[13] To the extent that the USDA wanted to move forward with a new rule while the appeal of the Wyoming injunction was pending, it could have developed a rule that was independent of the Roadless Rule.[14] We agree with the district court that the appealed Wyoming injunction did not reduce the removal of the Roadless Rule from the Code of Federal Regulations to a "paper exercise."

The USDA contends that its reliance on the categorical exclusion was reasonable because the State Petitions Rule did not "dictat[e] substantive rules" or implicate any "extraordinary circumstances" that would preclude reliance on the categorical exclusion for "[r]ules, regulations, or policies to establish Service-wide administrative procedures, program processes, or instructions." FSH 1909.15 § 31.1b., ¶ 2. As already explained, we disagree with the characterization of the State Petitions Rule as "procedural only."

---

[13]Stated otherwise, there is merit to the state plaintiffs' contention that:

> [t]he Forest Service was not free to "presume" that the Roadless Rule would be reinstated, nor was it free, at the other extreme, to presume that the rule would be invalidated by the Tenth Circuit. Either would have been a wholly arbitrary presumption on the information available to the agency in May 2005.
>
> . . . In such a circumstance, the only rational course of agency action would have been to acknowledge that the replacement of the Roadless Rule with the State Petitions Rule *could* have the effect of permanently removing protections from 58 million acres of forest land.

[14]Or it could have repealed the Roadless Rule in accordance with the National Environmental Policy Act's procedural requirements, and then issued another rule.

As the district court noted, the examples of the categorical exclusion set forth in the Forest Service Handbook involved "more routine procedures that are far less likely to significantly affect the environment than the State Petitions Rule's repeal of the Roadless Rule."[15] *Lockyer*, 495 F. Supp. 2d at 901. Counsel for the USDA could cite no occasion when this categorical exclusion was used to repeal a rule with substantive effects on land management. *Id.* at 902. The other rules promulgated under this categorical exclusion do not appear to involve the revocation of any major substantive environmental regulations; indeed, the USDA's use of this exclusion has generally involved routine matters.[16] The USDA's past usage

---

[15]The Forest Service Handbook identifies six examples of actions that could be excluded from further environmental documentation under this exclusion:

   a.  Adjusting special use or recreation fees using an existing formula.

   b.  Proposing a technical or scientific methodology or procedure for screening effects of emissions on air quality related values in Class I wilderness.

   c.  Proposing a policy to defer payments on certain permits or contracts to reduce the risk of default.

   d.  Proposing changes in contract terms and conditions or terms and conditions of special use authorizations.

   e.  establishing a Service-wide process for responding to offers to exchange land and agreeing on land values.

   f.  Establishing procedures for amending or revising Forest Land and Resource Management Plans.

FSH 1909.15 § 31.1b., ¶ 2.

[16]As the district court noted, examples of the occasions on which the USDA invoked this exclusion involve: "changes to locations at which the Forest Service may charge admission fees, clarifications of the appraisal procedures for determining fair market value when appraising timber, updates for field unit names and addresses, clarification of appeal procedures, and revisions to building standards for residential outbuildings." *Lockyer*, 459 F. Supp. 2d at 902 n.6 (internal citations omitted). These are clearly routine and procedural matters.

of this categorical exclusion for solely routine and rather mundane matters indicates that the agency's "own interpretation of the scope of this exclusion has been more modest than the one it advocates here." *Id.*

The Forest Service Handbook also lists "resource conditions" that "should be considered in determining whether extraordinary circumstances related to [a] proposed action warrant further [environmental] analysis and documentation." FSH 1909.15, § 30.3, ¶ 2. Relevant to the use of the categorical exclusion in this case are the conditions of: "Federally listed threatened or endangered species or designated critical habitat, species proposed for Federal listing or proposed critical habitat, . . . Forest Service sensitive species" and "[i]nventoried roadless areas." *Id.*

"Where there is substantial evidence in the record that exceptions to the categorical exclusion may apply, the agency must at the very least explain why the action does not fall within one of the exceptions." *California v. Norton*, 311 F.3d 1162, 1177 (9th Cir. 2002) (emphasis added). Within the Final Environmental Impact Statement that was developed for the Roadless Rule, there is considerable discussion of the unique and valuable qualities of roadless areas and the listed species that dwell in these lands. When it promulgated the State Petitions Rule, the USDA summarily concluded that the State Petitions Rule would have no "discernable effects on the various classes of resources listed in the agency's NEPA Policy and Procedures that can constitute extraordinary circumstances." 70 Fed. Reg. at 25,661. This cursory statement does not even identify those resource conditions that might be affected by the promulgation of the State Petitions Rule. Even if we were to believe that this rule might fall within the categorical exclusion—which we do not—this is an insufficient explanation of why the rule would not fall into one of the exceptions to the categorical exclusion.

[11] In sum, the USDA's determination that the State Petitions Rule, with its concurrent repeal of the Roadless Rule,

could be promulgated as a categorical exclusion was unreasonable.

By permanently removing the Roadless Rule from the Code of Federal Regulations, the State Petitions Rule did much more than establish a new procedure for the consideration of state-specific land management rules: it purported to ensure that future land management decisions would never again be constrained by the Roadless Rule and its enhanced protections for inventoried roadless areas. It was unreasonable for the USDA to characterize the permanent repeal of these substantive protections as "merely procedural" and within the scope of the cited categorical exclusion.

**[12]** We conclude that the threshold for environmental analysis under the National Environmental Policy Act has been met: the plaintiffs have raised substantial questions whether the State Petitions Rule, with its concurrent repeal of the Roadless Rule, may have a significant effect on the environment. *See Blackwood*, 161 F.3d at 1212.

**B**

The Supreme Court has called the Endangered Species Act "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). The statute reflects "a conscious decision by Congress to give endangered species priority over the 'primary missions' of federal agencies." *Id.* at 185. To accomplish this goal, the Endangered Species Act sets forth a comprehensive program to limit harm to endangered species within the United States.

**[13]** For federal agencies, the heart of the Endangered Species Act is section 7(a)(2). This section affirmatively commands each federal agency to "insure that any action authorized, funded, or carried out" by the agency "is not likely to jeopardize the continued existence of any endangered

species . . . or result in the destruction or adverse modification of [the designated critical] habitat of such species." 16 U.S.C. § 1536(a)(2). To carry out this substantive mandate, agencies must engage in a consultation process with the appropriate expert wildlife agency on the effects of any federal action to listed species. *See Or. Natural Res. Council v. Allen*, 476 F.3d 1031, 1033 (9th Cir. 2007) (describing the consultation process).

[14] The threshold for triggering the Endangered Species Act is relatively low: consultation is required whenever a federal action "*may affect* listed species or critical habitat." 50 C.F.R. § 402.14(a) (emphasis added); *see Am. Bird Conservancy v. FCC*, 545 F.3d 1190, 1191 (9th Cir. 2008); *see also* Interagency Cooperation—Endangered Species Act of 1973, as amended, 51 Fed. Reg. 19,926, 19,949 (June 3, 1986) ("*Any possible effect*, whether beneficial, benign, adverse or of an undetermined character, triggers the formal consultation requirement . . . ." (emphasis added)). The consultation process may be formal or informal. 50 C.F.R. §§ 402.13, 403.14. An agency's finding that its action will have no effect on listed species or critical habitat obviates the need for consultation. *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1447-48 (9th Cir. 1996).

[15] We must determine whether the USDA acted arbitrarily in determining that its rulemaking would have no effect on listed species or habitat. The USDA contends that the promulgation of the State Petitions Rule simply created a new administrative procedure that independently would have no effect on the environment. For the reasons discussed above, we reject this argument. The USDA's repeal of the substantive protections afforded to inventoried roadless areas through the Roadless Rule *may affect* federally listed species and their critical habitats. The USDA conceded as much at oral argument, when counsel stated that a nationwide proscription on building in inventoried roadless areas, like that of the Road-

less Rule, "would impose greater protections in roadless areas."

Indeed, when it was promulgating the Roadless Rule, the USDA identified inventoried roadless areas as "biological strongholds for populations of threatened and endangered species." 66 Fed. Reg. at 3246. At that time, the USDA concluded that a decision not to adopt the Roadless Rule in favor of continued building in roadless areas "would result in a greater likelihood of measurable losses of habitat quality and quantity in inventoried roadless areas, with the increased potential for adverse effects to some [threatened, endangered, and proposed] species." U.S. Forest Service, *Roadless Area Conservation Final Environmental Impact Statement* 3-182 (Nov. 2000). Nowhere does the USDA contend that the situation for endangered and threatened species in roadless areas has changed in the intervening years.

[16] The USDA also contends, as it did with respect to the National Environmental Policy Act, that the Roadless Rule was not part of the "regulatory 'baseline' " in place when the USDA adopted the State Petitions Rule. The Roadless Rule was in effect without injunction for three months, and the USDA fails to cite any support for the proposition that it can ignore a valid rule, codified in the Code of Federal Regulations, simply because the rule was not in effect long enough. Therefore, because the Roadless Rule may affect listed species and their critical habitats, the Forest Service was required to engage in consultation under section 7 of the Endangered Species Act before effecting the rule's repeal through the promulgation of the State Petitions Rule.

## C

The USDA and defendant-intervenor-appellants argue that it was an abuse of discretion for the district court to reinstate the Roadless Rule. The USDA asserts that the district court overstepped its bounds in reviewing agency action by reinstat-

ing a rule that was neither "previously in force" nor the "status quo."

**[17]** We have explained that

> To obtain permanent injunctive relief, a plaintiff must show (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. This traditional balancing of harms applies in the environmental context. In determining the scope of an injunction, a district court has broad latitude, and it must balance the equities between the parties and give due regard to the public interest.

*Geertson Seed Farms v. Johanns*, No. 07-16458, ___ F.3d ___, 2009 WL 1782972, at *4 (9th Cir. 2009) (internal quotation marks and citations omitted). "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987). Even when a district court finds that a violation of the National Environmental Policy Act has occurred, "in 'unusual circumstances' an injunction may be withheld, or, more likely, limited in scope." *Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 738 n.18 (9th Cir. 2001).

**[18]** Having concluded that the repeal of the Roadless Rule and the promulgation of the State Petitions Rule violated both the National Environmental Policy Act and the Endangered Species Act, the district court reasoned that it was necessary

to reinstate the protections of the Roadless Rule in order to avoid further degradation of the nation's inventoried roadless areas. We conclude that this was not an abuse of discretion.

In *Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005), we indicated that "[t]he effect of invalidating an agency rule is to reinstate the rule previously in force." *See also Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 562 (9th Cir. 2006) (applying *Paulsen* in the context of Federal Land Policy and Management Act and National Environmental Policy Act challenges). The USDA contends that the district court should have "reinstated" the forest management plans because the Roadless Rule was in effect for a limited period of time and because the agency stated unequivocally its desire that the Roadless Rule not be implemented should the State Petitions Rule be found defective. That the district court found unpalatable the USDA's proposed remedy—"to allow a major environmental rule that the Court has determined was improperly repealed to nonetheless remain permanently repealed without a hard look at the environmental consequences"—is not surprising. *Lockyer*, 459 F. Supp. 2d at 917.

The district court gave meaningful consideration to the equities in this case and carefully applied the traditional balancing of the harms analysis to arrive at its conclusion that the Roadless Rule should be reinstated. We find no abuse of discretion.

## III

With the passage of the Roadless Rule, inventoried roadless areas, "for better or worse, [were] more committed to pristine wilderness, and less amenable to road development for purposes permitted by the Forest Service." *Kootenai Tribe*, 313 F.3d at 1106. The Forest Service may reevaluate the approach to roadless area management embodied in the Roadless Rule; however, it must comply with the procedural requirements contained in the National Environmental Policy Act and the

Endangered Species Act if and when it does so. The Forest Service did not promulgate the State Petitions Rule in a manner that fulfilled these statutory requirements.

The Forest Service unreasonably found that the State Petitions Rule was without any substantive effect, and it unreasonably concluded that the rule fell within the agency's categorical exclusion for rules addressing routine matters of administrative procedure. The promulgation of the State Petitions Rule had the effect of permanently repealing uniform, nationwide, substantive protections that were afforded to inventoried roadless areas, and replacing them with a regime of the type the agency had rejected as inadequate a few years earlier. Such a substantial regulatory change is neither routine nor merely procedural.

Similarly, the USDA's determination that no consultation was required under Section 7 of the Endangered Species Act was arbitrary and capricious, as the permanent removal of the protections afforded under the Roadless Rule may affect federally listed species and their critical habitats.

The district court did not abuse its discretion by enjoining the State Petitions Rule and reinstating the Roadless Rule.

**AFFIRMED.**